LEONARD CARDER, LLP
AARON KAUFMANN, SBN 148580
DAVID POGREL, SBN 203787
ELIZABETH GROPMAN, SBN 294156
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0174
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
dprogel@leonardcarder.com

WYNNE LAW FIRM
EDWARD J. WYNNE, SBN 165819
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900
ewynne@wynnelawfirm.com

*Attorneys for Plaintiff*
*HUY NGUYEN*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUY NGUYEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:15-cv-05239-JCS<br><br>Complaint Filed: August 25, 2015<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: G, 15th Floor |

## Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

I.    Introduction ............................................................................................................... 2

II.   Factual Background .................................................................................................... 2

      A.    Plaintiff ............................................................................................................ 2

      B.    Class Positions, Class Size, and Uniform Compensation Plans ..................... 3

      C.    Timing of Calculating and Payment of HMCs' Incentive Pay ...................... 3

      D.    Marketing Tools Purchased and Used By HMCs ........................................... 6

III.  ARGUMENT ............................................................................................................. 9

      A.    Class Certification Standards .......................................................................... 9

      B.    The Proposed Class Meets the Requirements of Rule 23(a) .......................... 9

      C.    The Requirements of Rule 23(b)(3) Are Satisfied ....................................... 11

            1.    Common Issues Predominate as to Wells Fargo's Charging HMCs for
                  Marketing Tools ................................................................................... 11

                  a.    Legal Standard for Claims Under California Labor Code §
                        2802 ......................................................................................... 11

                  b.    Claims for Reimbursement Can Be Resolved on a Class-wide
                        Basis ......................................................................................... 12

            2.    Common Issues Predominate as to the Timeliness of Wells Fargo's
                  Commission Payments .......................................................................... 13

                  a.    Timing Requirements Under Labor Code § 204 ...................... 13

                  b.    Whether Wells Fargo Paid Incentive Pay Timely Will Turn on
                        Uniform Compensation Plans and Corporate Designee
                        Admissions ............................................................................... 14

            3.    Certification is a Superior Method of Adjudication .............................. 15

IV.   CONCLUSION ........................................................................................................ 17

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION                                                                    Case No. 3:15-cv-05239-JCS

1

## Table of Authorities

2

**Federal Cases**

3

*Abdullah v. U.S. Sec. Assocs., Inc.*
  731 F.3d 952 (9th Cir. 2013) ........................................................................................... 10

4

*Achal v. Gate Gourmet, Inc.*,
  114 F. Supp. 3d 781 (N.D. Cal. 2015) ............................................................................... 2

5

6

*Boyd v. Bank of Am. Corp.*,
  300 F.R.D. 431 (C.D. Cal. 2014) ..................................................................................... 11

7

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ......................................................................................... 15

8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10, 11, 16

9

10

*Hopkins v. Stryker Sales Corp.*,
  2012 WL 1715091 (N.D. Cal. May 14, 2012) ........................................................... 10, 13

11

*I.B. v. Facebook, Inc.*,
  82 F.Supp.3d 1115 (N.D. Cal. 2015) .................................................................................. 9

12

*In re N. Dist. of Cal., Dalkon Shield, Etc.*,
  693 F.2d 847 (9th Cir.1982) ............................................................................................ 15

13

*In re Taco Bell Wage & Hour Actions*,
  No. 1:07-CV-01314-OWW, 2011 WL 4479730 (E.D. Cal. Sept. 26, 2011) ............................ 16

14

15

*In Re Wells Fargo Home Mortg.*,
  571 F.3d 953 (9th Cir.2009) ............................................................................................ 11

16

*Levya v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ........................................................................................... 11

17

*Lindell v. Synthes USA*,
  No. 11-CV-02053-LJO-BAM, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014) ...................... 13

18

19

*Marr v. Bank of Am.*,
  No. 09–cv–05978 WHA, 2011 WL 845914 (N.D. Cal. Mar. 8, 2011) ............................ 12

20

*Nguyen v. Wells Fargo Bank*,
  No. 15-CV-05239-JCS, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016) .......................... 11

21

22

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ......................................................................................... 10

23

*Slay v. CVS Caremark Corp.*,
  No. 1:14-CV-01416-TLN, 2015 WL 2081642 (E.D. Cal. May 4, 2015) ......................... 14

24

*Stuart v. RadioShack Corp.*,
  641 F.Supp.2d 901 (N.D. Cal. 2009) ............................................................................... 12

25

26

*Takacs v. A.G. Edwards & Sons, Inc.*,
  444 F. Supp. 2d 1100 (S.D. Cal. 2006) ............................................................................ 12

27

*Trosper v. Stryker Corp.*,
  No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ........................... 13

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION                                                                    Case No. 3:15-cv-05239-JCS

*Tyson Foods, Inc. v. Bouaphakeo*,
   —— U.S. ——, 136 S.Ct. 1036 (2016) ........................................................................... 9

*Villalpando v. Exel Direct Inc.*,
   No. 12-CV-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014)................................ 2

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. --, 131 S.Ct. 2541 (2011)....................................................................... 12, 15

*Wilson v. Kiewit Pac. Co.*,
   No. C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ................................... 13

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ................................................................................... 10


**State Cases**

*Duran v. U.S. Bank Nat. Assn.*,
   59 Cal. 4th 1 (2014)...................................................................................................... 11

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
   42 Cal.4th 554 (2007) ................................................................................................... 12

*Grissom v. Vons Companies, Inc.*,
   1 Cal.App.4th 52 (1991) ................................................................................................ 12

*Koehl v. Verio, Inc.*,
   142 Cal.App.4th 1313 (2006) ........................................................................................ 14

*Peabody v. Time Warner Cable, Inc.*,
   59 Cal.4th 662 (2014) ................................................................................................... 14

*Sav-on Drug Stores, Inc. v. Superior Court*,
   34 Cal.4th 319 (2004) ................................................................................................... 16


**Statutes, Rules & Regulations**

California Labor Code
   § 200(a)......................................................................................................................... 14

California Labor Code
   § 204 ............................................................................................................................. 16

California Labor Code
   § 204 (a) ........................................................................................................................ 13

California Labor Code
   § 2802 ..................................................................................................................... passim

Federal Rule of Civil Procedure
   23(a) ......................................................................................................................... 9, 10

Federal Rules of Civil Procedure
   23 (a)(1) ......................................................................................................................... 9

Federal Rule of Civil Procedure
    23(b)(3) ................................................................................................................. passim

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions (5th ed. 2012) ............................................. 9

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure
    (2d ed. 1986) ...................................................................................................................... 11

DLSE Manual
    § 34.9 ........................................................................................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION                                                                Case No. 3:15-cv-05239-JCS

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on a hearing date and time to be determined by this Court in the courtroom of the Honorable Joseph C. Spero in Courtroom G—15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff will and hereby does move this Court for an order to certify his claims under Federal Rule of Civil Procedure 23, and appoint Plaintiff's counsel as Class Counsel. This motion is based on the following Memorandum of Points and Authorities, the supporting Declaration of Edward Wynne and its attached exhibits, the supporting Declaration of Aaron D. Kaufmann, the supporting declaration of Pablo Ramirez, the Supporting Declaration of Mike Thomas, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

Plaintiff moves this Court for an order to certify the following class and sub-class under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> Class
> All persons who are or have been employed, at any time from August 25, 2011 through the date of the Court's granting of class certification in this matter, by Wells Fargo Bank, National Association in California under the job titles Home Mortgage Consultant, Home Mortgage Consultant Jr. and Private Mortgage Banker (collectively "HMCs")

> Waiting Time Penalties Sub-Class
> All persons who have been employed and separated from employment (either by involuntary termination or resignation), at any time from August 25, 2011 through the date of the Court's granting of class certification in this matter, by Wells Fargo Bank, National Association in California under the job titles Home Mortgage Consultant, Home Mortgage Consultant Jr. and Private Mortgage Banker and who did not timely receive all of their wages at time of separation.

Plaintiff further seeks to have certified for resolution on behalf of this class each of the causes of action pled in his First Amended Class Action Complaint, which include: Claim Four for reimbursement of business expenses (Labor Code § 2802)[1]; Claim Five for failure to pay all wages at termination (Labor Code §§ 201-03); Claim Six for failure to provide lawful wage statements (Labor Code § 226); and, Claim Seven for violations of California's Unfair Competition Law (Cal.

---

[1] All references to "Labor Code" refer to the California Labor Code.

Bus. & Prof. Code § 17200 *et seq.*), including failure to reimburse business expenses and to pay timely commissions under Labor Code § 204.[2] Plaintiff also seeks to have the Plaintiff's Counsel identified in the above caption to be appointed as Class Counsel under Rule 23(g) of the Federal Rules of Civil Procedure.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      Introduction

Plaintiff Huy Nguyen moves to represent a class of over 2,100 Home Mortgage Consultants (HMCs) in California, who, under Wells Fargo's uniform policies, have not been reimbursed for purchasing marketing tools—Wells Fargo's HMC websites and FASTMail program--to increase sales of Wells Fargo's home loan products and have not been paid commissions on a timely basis. Whether, under California's Labor Code, HMCs are entitled to be reimbursed for purchasing the marketing tools because they are "reasonable costs" will turn on common evidence. That evidence includes Wells Fargo's admissions that all HMCs perform similar sales duties, are paid on commission, and are offered uniform training on such tools; and on Wells Fargo's blanket promotional materials that tout such tools as "vital" and "valuable" in furthering HMCs' efforts to increase sales. Whether Wells Fargo timely pays commissions to the HMCs based on when such commissions are deemed earned under California law will also turn on common evidence, as all HMCs are subject to the same commission sales plans and payment schedules and are subject to Wells Fargo's uniform administration of commission calculations and payments. The Court will thus be able to efficiently resolve whether Wells Fargo's class-wide policies are lawful in one case, well-justifying class certification.

## II.      Factual Background

### A.      *Plaintiff*

Plaintiff Huy Nguyen "worked for Wells Fargo . . . in California as a Home Mortgage Consultant and a Private Mortgage Banker, two loan originator positions." (Stip. Fact No. 1, "Stip.

---

[2] Plaintiff does not move for certification of Claim Eight penalties under the Labor Code Private Attorney General Act (Cal. Labor Code § 2699) because certification under Fed.R.Civ.P. 23 is not required. *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *19 (N.D. Cal. Mar. 28, 2014).

Fact.") He worked in those positions from October 1, 2011 until August 17, 2015. (Stip. Fact No. 5.) He worked in and out of branch locations in Diamond Bar and Pasadena, California. (Ex. 1 to Decl. of Edward J. Wynne, Nguyen Depo., p. 65-66.)

Nguyen earned incentive pay on the loan products he sold and that were funded. (Stip. Fact Nos. 4, 6, Ex. A.)

In the course of selling Wells Fargo's home mortgage products, Nguyen purchased from Wells Fargo an individual HMC Website and FASTMail. (Ex. 1, Nguyen Depo., p. 114:15-18.) He paid for these marketing tools through adjustments to his commission pay. (Ex. 1, Nguyen Depo., p. 118:2-6; see also, Ex. 2 to Decl. of Wynne, Retail Commission Report for H. Nguyen for period 3/1/14 to 3/31/2014, p. WFB000201.)

**B.    _Class Positions, Class Size, and Uniform Compensation Plans_**

The Home Mortgage Consultant class positions--Home Mortgage Consultant, Private Mortgage Banker, Home Mortgage Consultant Jr., and Private Mortgage Banker, Jr (collectively "HMCs")—all share as their primary duty the origination of home mortgage loans. (Stip. Fact Nos. 2-3.)

All HMCs have been compensated under a series of uniform compensation plans. (Stip. Fact Nos. 7-11, Exhs. B-D.) Wells Fargo has treated the HMCs equally for purposes of implementing its compensation plans at issue. (Stip. Fact No. 2.) All HMCs earn incentive pay based on the loans they sold and that are closed. (Stip. Fact No. 4.)

According to Wells Fargo's removal papers, "2,015 putative class members . . . experienced some adjustments to their commissions as a result of participating in the marketing programs at issue." (ECF 1, Notice of Removal, ¶ 9.)

**C.    _Timing of Calculating and Payment of HMCs' Incentive Pay_**

All HMCs are classified as non-exempt and eligible for overtime compensation. (Ex. 3 to Decl. of Wynne, Deposition of Mark Faktor, p. 17:7-18:6.) The hourly pay is fully vested when paid and not subject to recapture. (Ex. 3, Faktor Depo., p. 18:19-19:19.) The hourly pay is

characterized by Wells Fargo as an advance against commissions.[3] (Ex. 3, Faktor Depo., p. 23:21-24:7.) Commissions, however, are not considered advances by Wells Fargo. (Ex. 3, Faktor Depo., p. 29:3-5.)

Wells Fargo pays HMCs every two weeks. (Stip. Fact No. 12.) However, it only pays the HMCs incentive pay once a month, based on monthly loan fundings on the last pay day of the month following the month in which the loans funded. (Stip. Fact No. 14.) Wells Fargo's monthly pay cycle for incentive pay has applied to all HMCs equally since at least 2012. (Ex. 3, Faktor Depo., p. 58:19-59:19.)

The HMC Incentive Plans provide "commission credit will be granted on the last day of the month in which the loan actually funds (i.e. disbursement of funds to the closing/settlement agent)." (Stip. Facts Nos. 9-11, Exhs. B-D, pp. 12, 26, 39.[4]) The "Standard Commission Schedule" states that commission rates are determined based on "monthly funded" loans. (Stip. Facts, Nos. 9-11, Exhs. B-D, pp. 12, 26, 39.) The pay rates for each of Wells Fargo's many loan products is calculated from the unit and dollar volumes on loans funded by month's end.[5] (Stip. Facts, Nos. 9-11, Exhs. B-D, pp. 13-15, 27-28, 40-42.) In sum, "[g]ross commissions will be calculated according to the commission credit schedule and the loans funded in the month." (Stip. Facts, Nos. 9-11, Exhs. B-D, pp. 18, 31, 44.)

The Plans' explanation of when commission pay is earned equates awarding commission credits with the earning of commission wages: "To *earn* commissions...under this Plan, the Employee must be actively employed by Wells Fargo through the date *commission credit is granted* and through the applicable performance period."[6] (Stip. Fact No. 7, Ex. B, p. 19, emphasis

---

[3] Wells Fargo uses the terms "incentive pay" and "commissions" interchangeably for purposes of HMC compensation. *Cf.*, Ex. B, sec. III of Incentive Compensation Plan (referring to "incentive compensation") with sec. IV (discussing "commissions"). Because this is not a misclassification case, the distinction is not relevant.

[4] Page numbers refer to ECF page numbers.

[5] The only exception to this is for "Home Equity Lines," on which HMCs are paid [a]n initial, estimated commission credit" when the loan funds but is then subject to readjustment based on utilization of the line in the first three months. Id., pp. 14, 27, 40.

[6] 2015 plan refers to when "commission credit is granted" in the text but "**When Incentive Payments are Earned**" in the heading. (Stip. Fact No. 11, Ex. D, p. 45.) While the 2014 plan

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 3:15-cv-05239-JCS

added). Commission credit is granted the last day of the month it funds. (Ex. 3, Faktor Depo., p. 65:9-17.) HMCs have no more "duties or activities" once "a loan is funded." (Ex. 3, Faktor Depo., p. 31:16-19.)

In order to calculate commissions, Wells Fargo's payroll department receives three types of data: time cards that come in weekly; partner referrals that come in 8-10 business days after the end of the month; and, refinances (referred to as "Wells to Wells") which comes in 8-15 days after the end of the month. (Ex. 3, Faktor Depo., pp. 12:10-17:6; see also, Ex. 4 to Decl. of Wynne, email "Timing for Commission Processing – California Terms," April 5, 2016, pp. WFB002215-2216.)

Wells Fargo pays the commissions in the last pay period of the month in arrears because the calculation or "verification process" takes, on average, 15 days. (Ex. 3, Faktor Depo., p. 37:21-38:2.) Included in the verification process are receiving the timecards that come in every Thursday. (Ex. 3, Faktor Depo., p. 38:3-39:7.) Another element in the verification process is the "Wells to Wells" refinances where the compensation department takes 8-12 days after month-end to confirm whether or not the borrower is a former customer. (Ex. 3, Faktor Depo., p. 40:4-23.) Even though Wells Fargo knows who the customer is well in advance of the loan being funded, the system is not "set up" to verify this information any sooner. (Ex. 3, Faktor Depo., p. 40:24-43:10.) The third element in the verification process is the partner referrals data, which the compensation department does not pull until 8-12 days after the end of month even though the data is already in the system. (Ex. 3, Faktor Depo., p. 47:9-48:2.)

Wells Fargo's takes the position that the commissions are not earned until they paid, which occurs in the last pay period of the month in which the loan was funded. (Ex. 3, Faktor Depo., p. 36:7-13.) Wells Fargo rests this position on the fact that "the calculation hasn't been completed

---

refers to when commission/incentive payments are "credited" in both the text and heading. (Stip. Fact No. 10, Ex. C, p. 32.) Wells Fargo's corporate designee could not explain the difference between when incentive payments are earned versus commission credit being granted. (Ex. 3, Faktor Depo., p. 72:25-73:7.) Wells Fargo's interchanging of "credit" and "earn" underscores that the terms function the same and support that commissions under the plans are earned upon granting of commission credits.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                                                 Case No. 3:15-cv-05239-JCS

yet." (Ex. 3, Faktor Depo., p. 61:16-22.) If all of the data was received by the compensation department and the calculations were done within a few days of the month's end, Wells Fargo's corporate representative Mark Faktor stated that the commissions would be earned then. (Ex. 3, Faktor Depo., p. 79:1-80:18.) Regardless, the Incentive Plan governs Wells Fargo's policy. (Ex. 3, Faktor Depo., 82:1-83:5.)

**D.** ***Marketing Tools Purchased and Used By HMCs***

Because an HMC's pay is directly tied to their loan sales production, Wells Fargo incentivizes and encourages HMCs to generate sales by finding new leads and cultivating "recaptures" from current and prior Wells Fargo loan product customers. (Ex. 1, Nguyen Depo., p. 128:6-23; Pablo Ramirez Decl. ¶ 6.) To help develop new leads and increase "recapture" rates, Wells Fargo has encouraged all HMCs to use certain marketing tools, such as its individualized HMC Website and FASTMail programs. (Ex. 1, Nguyen Depo. p. 120:21-121:12; 128:24-129:11; Pablo Ramirez Decl. ¶¶ 6-8; Mike Thomas Decl. ¶¶ 9-10.) Wells Fargo has promoted the use of its HMC Websites and FASTMail through uniform on-line materials, brochures, and trainings. All HMCs have been given access to the same promotional materials regarding HMC Websites and FASTMail through Wells Fargo's "sales central portal." (Ex. 5 to Decl. of Wynne, Deposition of Jenny Clark Depo., p. 100:18-101:14; Exhs. 6-9 to Decl. of Wynne, exhibits from Clark depo.)

From before the opening of the putative class period until January 2016, Wells Fargo charged the HMCs for use of the individualized HMC Website and FASTMail tools through deductions from the HMCs' pay. (Ex. 10 to Decl. of Wynne, Jenny Clark Decl. ISO MSJ, ECF 28-1 ("Clark Decl."), ¶¶ 4, 8.) As of January 2016, Wells Fargo provides HMC Websites for free (Ex. 5, Clark Depo., p. 11:8-25; Ex. 10, Clark Decl., ¶ 6), and allows high-producing HMCs to use FASTMail at no cost. (Ex. 5, Clark Depo., p. 17:13-18:8; Ex. 10, Clark Decl., ¶ 15.) The changeover to offering such marketing tools for free was intended to retain HMCs. (Ex. 5, Clark Depo., p. 29:1-20.)

Wells Fargo launched the HMC Website program to further compliance with governmental regulations regarding customer communications; thus the websites contain "mostly standardized content that Wells Fargo would ensure remained current with the governing regulations." (Ex. 10,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                                                       Case No. 3:15-cv-05239-JCS

Clark Decl., ¶ 3.) Wells Fargo offers the "personalized" HMC website to help the HMCs increase their "visibility." (Ex. 5, Clark Depo., p. 19:5-7.) The website features a picture of the HMC, customer application forms, and a "contact me" form, among other things. (Ex. 5, Clark Depo., p. 18:23-19:4.)

In its web–portal materials available to all HMCs, Wells Fargo touts the HMC website as a "valuable business tool" that helps HMCs "direct customers to their web site to begin the application process online," and "provides greater business efficiency, significantly reducing data entry for an HMC." (Ex. 5, Clark Depo., p. 60:7-61:11; Ex. 6, p. WFB000314.) It also promotes the HMC website as a "valuable referral tool," explaining that it allows the HMC to "list your referral sources directly on your Website -- potentially sending customers to them. And your referral sources can link back to you from their Websites." (Ex. 5, Clark Depo., p. 61:12-62:19; Ex. 6, p. WFB000314.) The on-line materials conclude with emphasis that the HMC website is a "vital tool for your business." (Ex. 5, Clark Depo., p. 62:17-19; Ex. 6, p. WFB000314.)

Despite its uniform promotion of these websites, Wells Fargo has taken the uniform position that they are not "necessary." (Ex. 5, Clark Depo., p. 25:17-25.)

FASTMail is a "contact management program" that Wells Fargo developed to conform customer communications with regulatory requirements. (Ex. 10, Clark Decl., ¶ 7.) Wells Fargo has described FASTMail to HMCs as: "An automated mailing program that keeps HMCs in touch with existing, new and prospective customers." (Ex. 8, p. DMK008816.)

In its FASTMail brochure, Wells Fargo claims: "*FAST*Mail works*!,"* "*FAST*Mail Frees Up Your Time," "*FAST*Mail Pays for Itself," "*FAST*Mail Helps Drive Leads to Realtors," "*FAST*Mail Builds Long Lasting Relationships," helps with "Database Customer Management." (Ex. 5, Clark Depo., p. 93:12-95:22; Ex. 8, pp. DMK008813, DMK008820-21.) Wells Fargo further sells the product in training materials by reporting results that show 90 percent of HMCs who use FASTMail believe it is a "valuable, very valuable, or extremely valuable." (Ex. 5, Clark Depo., p. 84:1-85:17, 86:8-23; Ex. 8, p. DMK008818.) Wells Fargo's study of the effectiveness of its FASTMail program concluded that it increases "recapture" of former customers generating increased sales. (Ex. 10, Clark Decl., ¶ 9.) It promotes use of FASTMail as a "Great Investment,"

telling the HMCs that it will help them recapture more customers. (Ex. 5, Clark Depo., p. 72:12-20; Ex. 8, p. DMK008822-24.) FASTMail is a "valuable tool" for the HMCs and helps them be "as effective as can be" in increasing sales for themselves and the bank. (Ex. 5, Clark Depo., pp. 46:24-47:4, 74:15-76:12. *See also* Ex. 5, Clark Depo., p. 79:14-19 (FASTMail's "business reply card" feature is a "powerful tool").)

Despite its blanket endorsement of its FASTMail program, Wells Fargo has taken the uniform position that it was *not* required to reimburse HMCs for use of the program because it FASTMail is "not necessary for their jobs." (Ex. 5, Clark Depo., p. 47:19-48:2.)

Consistent with Wells Fargo's classwide push to sell the HMC Website and FASTMAIL, former Sales Managers and Wells Fargo's own surveys portray the coercive efforts to compel HMCs to subscribe to these marketing tools. For instance, former Sales Manager Mike Thomas states: "Wells Fargo compelled the HMCs to buy FASTMail by threatening to take their book of business away and re-assign it to another HMC if the HMC did not buy FASTMail. My Area Managers and Regional Managers constantly made this threat." (Decl. of Thomas, ¶ 9.) Similarly, Mr. Thomas recalls: "It was Wells Fargo practice to only re-assign the book to an HMC that had purchased FASTMail. If the HMC did not purchase FASTMail, that HMC would never get any portion of a book that needed to be re-assigned." (Decl. of Thomas, ¶ 10.) According to former Sales Manager Pablo Ramirez, Regional Manager Jose Torrez summed up Wells Fargo's policy and practice in this regard: "If they can't sign up for FASTMail – then fuck them – take their book." (Decl. of Ramirez, ¶ 8.) The results of Wells Fargo's 2013 survey of its HMCs confirm this retaliatory atmosphere of coercion:

● "*Management sells this product to HMC with implications that our book of business will be given to other HMC's to market too if we dont (sic) sign up and pay Wells Fargo for postage and mailers*" (Ex. 11 to Decl. of Wynne, 2013 FASTMail Survey Results, Question 2, Response 70.)

● "*we are forced to particpate (sic) in Fast Mail or we were told we would lose our branch assignments*" (Ex. 11 to Decl. of Wynne, 2013 FASTMail Survey Results, Question 6, Response 6.)

● "*It is hard to be called a voluntary program and then be told you will lsoe (sic) your branch if you withdraw*" (Ex. 11 to Decl. of Wynne, 2013 FASTMail Survey Results, Question 20, Response 60.)

## III.   ARGUMENT

### A.   *Class Certification Standards*

Rule 23 of the Federal Rules of Civil Procedure permits a class to be certified if all of the requirements of Rule 23(a) are satisfied and one of the requirements of Rule 23(b) is met as well. Rule 23(a) requires: 1) numerosity; 2) commonality; 3) typicality; and 4) fair and adequate representation of the interests of the class. Fed. R. Civ. P. 23(a).

Here Plaintiff seeks a class under Rule 23(b)(3), which allows a class action to be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof.' " *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S.Ct. 1036, 1045, (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012) (internal quotation marks omitted)).

### B.   *The Proposed Class Meets the Requirements of Rule 23(a)*

**Numerosity.** Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). The class here consists of well-over 2,000 current and former HMCs—too many to join individually as a practical manner and well-over the size generally recognized as sufficient to meet this requirement. *I.B. v. Facebook, Inc*., 82 F.Supp.3d 1115, 1126 (N.D. Cal. 2015) ("Courts have repeatedly held that classes comprised of 'more than forty' members presumptively satisfy the numerosity requirement.").

**Adequacy.** The adequacy requirement evaluates whether the plaintiff and plaintiff's counsel (1) "have any conflicts of interest with other class members" and (2) will "prosecute the

1    action vigorously on behalf of the class[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

2    Cir. 1998). *See also Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016). No such

3    conflicts exist here, as Plaintiff seeks relief for common injuries that would benefit the entire class.

4    Plaintiff has actively served the class, including responding to discovery and sitting for his

5    deposition. (Wynne Decl. ¶ 11.) Plaintiff's counsel have litigated many wage-and-hour class

6    actions, including several expense reimbursement cases for other mortgage loan officers and other

7    sales positions, and will continue to prosecute this case vigorously. (Wynne Decl. ¶¶ 5-8;

8    Kaufmann Decl. ¶¶ 5, 15.) Both elements are thus satisfied here.

9         **Commonality.** Rule 23(a) requires the presence of a single key common question that is

10   capable of class-wide resolution. *Abdullah v. U.S. Sec. Assocs., Inc.* 731 F.3d 952, 957 (9th Cir.

11   2013); *Wit,* 317 F.R.D. at 121. Judge Lucy Koh observed, "District courts throughout this circuit

12   have found that commonality is met when, as here the proposed class of plaintiffs asserts that an

13   employer adopted a policy of not reimbursing its employees' necessary business expenses in

14   violation of Cal. [sic] Bus. Code § 2802." *Hopkins v. Stryker Sales Corp.*¸ 2012 WL 1715091, *5

15   (N.D. Cal. May 14, 2012). The same is true here. Whether Wells Fargo's charging its HMCs for

16   marketing tools violates Cal. Labor Code § 2802 and whether its schedule for paying commissions

17   violates Cal. Labor Code § 204 provide common questions that unite the class. Where, as here, the

18   resolution of those common questions will turn on class-wide admissions from corporate designee

19   testimony, uniform compensation and payroll policies and procedures, and promotional materials

20   regarding the marketing tools made available to all HMCs, the commonality requirement is

21   satisfied.

22        **Typicality.** Typicality is satisfied if the representative's claims are "reasonably co-

23   extensive" with those of absent class members; they need not be identical. *Rodriguez v. Hayes*, 591

24   F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted); *Wit,* 317 F.R.D. at 129. Here,

25   Plaintiff's claims are typical of the class because they derive from Wells Fargo's admitted class-

26   wide policies regarding charging for marketing tools and schedule for commission payments,

27   which resulted in similar or common injury. *See, e.g.*, *Wit* at 129 (typicality met where plaintiffs

28   and putative class were subject to the same plans and guidelines that give rise to the claims).

**C.** *The Requirements of Rule 23(b)(3) Are Satisfied*

Plaintiff satisfies the requirements of Rule 23(b)(3) because: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Rule 23(b)(3) tests whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). The presence of some individualized issues, such as damages, does not preclude a finding that common issues predominate. *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). In wage and hour cases, courts have found that predominance is satisfied where, as shown here, liability will be determined based on the lawfulness of class-wide, written policies. *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014) citing *In Re Wells Fargo Home Mortg.,* 571 F.3d 953, 958–59 (9th Cir.2009) ("uniform corporate policies will often bear heavily on questions of predominance and superiority."); *see also, Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 30 (2014) ("an employer's uniform policy or consistent practice" supports certification).

**1. Common Issues Predominate as to Wells Fargo's Charging HMCs for Marketing Tools**

**a. Legal Standard for Claims Under California Labor Code § 2802**

California protects employees by providing that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" Labor Code § 2802 (a). Section 2802, subsection (c) defines the term "necessary expenditures or losses" as "all reasonable costs…" This Court in this case has observed: "'Necessity is by nature a question of fact' and that 'the reasonableness of any given expenditure must turn on its own facts.'" *Nguyen v. Wells Fargo Bank*, No. 15-CV-05239-JCS, 2016 WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) *quoting Grissom v. Vons Companies, Inc.*, 1 Cal.App.4th 52, 58 (1991). Further, this Court has already ruled that in order for an expense

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                                    Case No. 3:15-cv-05239-JCS

to be "necessary" under section 2802, it need not be mandatory. *Id.* citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1104 (S.D. Cal. 2006).

The elements of a claim under Labor Code § 2802 are: (i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary. *Marr v. Bank of Am.,* No. 09–cv–05978 WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) citing *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal.4th 554, 568, (2007). "In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Id.* citing *Stuart v. RadioShack Corp.,* 641 F.Supp.2d 901 (N.D. Cal. 2009).

Defendant does not dispute that its HMCs made the expenditures, that the expenditures were made in discharging their duties or that it knew the expenditures were made. The disagreement between the parties is whether the expenditures were reasonable or not. Whether the expenses HMCs incurred for use of Wells Fargo's HMC Website and FASTMail programs were reasonable within the meaning of Labor Code § 2802 is subject to common proof in the form of Wells Fargo's class-wide admissions and its own marketing materials.

### b.  Claims for Reimbursement Can Be Resolved on a Class-wide Basis

Wells Fargo uniformly promoted, in a variety of ways, the HMC Websites and FASTMail as "valuable" and "vital" sales tools, that could help HMCs find new business and "recapture" past customers. Wells Fargo encouraged *all* HMCs to use these marketing tools, touting their benefits and popularity. The HMCs all share as their primary duty the origination of home mortgage loans and used these common tools to increase their sales. As such, HMCs have a shared experience with respect to Wells Fargo's marketing tools. Therefore, as the question of whether the expenses were reasonable within the meaning of Section 2802 is common to all and "apt to drive the resolution of the litigation," class certification is warranted. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. --, 131 S.Ct. 2541, 2551(2011).

Other courts focusing on the whether a business expense is reasonable under Section 2802 have found such claims amendable to certification. For instance, in *Hopkins v. Stryker Sales Corp.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                                          Case No. 3:15-cv-05239-JCS

2012 WL 1715091, the district court found that the question of whether a business expense is "necessary" under Section 2802 satisfies the requirements for certification under Fed. R. Civ. P. 23(b)(3) where, as here, "there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class…" WL 1715091, at *10. In *Hopkins*, the court found that whether a particular business expense was necessary "is a common question that is better addressed on a motion for summary judgment or at trial than at class certification." *Id.* citing *Wilson v. Kiewit Pac. Co.*, No. C 09-03630 SI, 2010 WL 5059522, at *8 (N.D. Cal. Dec. 6, 2010) (certifying business expense class under Section 2802 where the "necessity" of a common expense presented a predominate common question).

 As in *Hopkins,* Wells Fargo's HMCs share a commonality of experience with regard to the expenses at issue. HMCs were subject to the same policy, namely, that if they wanted these marketing tools, they had to pay for them. The HMCs shared common duties because all have origination of home loans as their primary duty. And, the HMC Website and FASTMail expenses are common to the class. Because of the common experience, the question of whether these tools were reasonable under Section 2802 presents a predominant common question. *See Hopkins,* 2012 WL 1715091; *see also, Trosper v. Stryker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *17 (N.D. Cal. Aug. 21, 2014) (finding predominance where, "[t]he issue of whether [defendant's] reimbursement policy violated Section 2802 'may be determined on a class-wide basis, based upon common, though factually disputed, proof.'"); *Lindell v. Synthes USA*, No. 11-CV-02053-LJO-BAM, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) (in case seeking unreimbursed business expenses under Section 2802, predominance found based on legality of defendant's policy).

 **2. Common Issues Predominate as to the Timeliness of Wells Fargo's Commission Payments**

 **a. Timing Requirements Under Labor Code § 204**

 Labor Code § 204 (a) provides in relevant part, "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month …."[7] The California Supreme

---

[7] Plaintiff's Claims Seven and Eight allege Labor Code § 204 as a predicate violations to claims under Labor Code § 2699 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq. Slay v. CVS*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                                          Case No. 3:15-cv-05239-JCS

Court, in *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4th 662 (2014), observed that the term "wages" for purposes of Section 204 includes "'all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis*, or other method of calculation.'" *Id.* at 668, quoting Labor Code § 200 (a) (emphasis in original). Thus, earned commissions, like any other wages, must be paid semimonthly. *Id.* Further, commissions are not earned or owed until agreed-upon conditions have been satisfied, and such satisfaction often may occur on a monthly or less frequent basis. *Id.*

The fundamental principles governing when commissions are earned are:

> A commission is 'earned' when the employee has perfected the right to payment; that is, when all of the legal conditions precedent have been met. Such conditions precedent are a matter of contract between the employer and employee, subject to various limitations imposed by common law or statute.

*Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1335 (2006). Further, the DLSE has observed: "The provisions of any contract notwithstanding, California courts will not enforce unlawful or unconscionable terms and will construe any ambiguities against the person who wrote the contract (usually the employer) to avoid a forfeiture." DLSE Manual § 34.9 (internal cite omitted).

### b. Whether Wells Fargo Paid Incentive Pay Timely Will Turn on Uniform Compensation Plans and Corporate Designee Admissions

Whether Wells Fargo violated Section 204's semimonthly schedule will turn on the class-wide issue of whether HMCs earned commissions when their loans funded or when Wells Fargo calculated their earnings from the funded loans.

Wells Fargo takes the uniform position that the commissions are not earned until they paid, which occurs in the last pay period of the month in which the loan was funded. Faktor could not, however, identify where in the compensation plans (or any other documentation) it defines final calculations as the catalyst for earning commissions. (Ex. 3, Faktor Depo., p. 52:4-53:7.) Regardless, the Incentive Plans control when the commission wages were earned.

Plaintiff, on the other hand, contends that the Incentive Plans issued for all HMCs do not

---

*Caremark Corp.*, No. 1:14-CV-01416-TLN, 2015 WL 2081642, at *8, n. 7 (E.D. Cal. May 4, 2015).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                   Case No. 3:15-cv-05239-JCS

support Defendant's position that the commission wages are not earned until paid. Rather, the Incentive Plans state: "To *earn* commissions . . . under this Plan, the Employee must be actively employed by Wells Fargo through the date *commission credit is granted* and through the applicable performance period." The Plans also state, "commission credit will be granted on the last day of the month in which the loan actually funds (i.e. disbursement of funds to the closing/settlement agent)." Wells Fargo admits that once the loan is funded, there is nothing more for the HMC to do on the loan. Thus, it is Plaintiff's position that the commissions are earned at the time the commission credit is granted which is at the end of the month when the loan funds.

In *Wal-Mart*, the Supreme Court held that class claims, "must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Because the Incentive Plans are equally applicable to all HMCs, the resolution of this dispute is the "glue" that "will produce a common answer" to this question. 131 S. Ct. at 2545; *see also, Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("This case presents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit.")

### 3. Certification is a Superior Method of Adjudication

Fed.R.Civ.P. 23(b)(3) also requires that class action be a superior method of adjudication and lists various factors, all of which are satisfied here.

The first Rule 23(b)(3) factor for consideration is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). This factor is more relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See, e. g., In re N. Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 856 (9th Cir.1982). Where the monetary damages each plaintiff individually suffered are likely to be relatively modest, certifying a class action is favored. *In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-OWW, 2011 WL 4479730, at *9 (E.D. Cal. Sept. 26, 2011). Here, the value of each HMC's claim is modest, approximately $1,047 per HMC for the Section 2802

claim, according to Defendant's Notice of Removal.[8] (ECF 1, ¶ 12.) Likewise, the value for each HMC's PAGA claim for violations of Labor Code § 204 is also modest, approximately $227.[9] (*Id.*)

The second Rule 23(b)(3) factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). As there are no related or pending actions, this factor is satisfied. *In re Taco Bell Wage & Hour Actions*, 2011 WL 4479730, at *10.

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C). Avoiding the possibility of inconsistent rulings supports a finding that this factor is satisfied. *See Hanlon,* 150 F.3d at 1022 (class treatment is superior "whenever the actual interests of the parties can be served best by settling their differences in a a single action.")

The fourth and final Rule 23(b)(3) factor is "the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b) (3)(D). There are no difficulties in managing this action. The Section 2802 claim turns on whether the expenses were reasonable while the Section 204 claim turns on contract interpretation. Regarding the Section 2802 claim, Defendant has already calculated down to the dollar how much HMCs have had their pay adjusted for the marketing tools. (See, ECF 1, Notice of Removal, ¶ 12.) The Section 204 claim, as a predicate violation to the PAGA claim under Section 2699 *et seq*. is a simple penalty calculation based on pay periods which Defendant has likewise already calculated. (See, ECF 1, Notice of Removal, ¶ 12.) "Absent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence, including expert testimony. The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants." *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 340 (2004). Neither claim will entail an undue consumption of judicial resources nor pose a likelihood of degenerating into a series of mini-trials due to the discrete issues presented in this case. Accordingly, certification is a superior method of adjudication.

---

[8] $2,108,945 in marketing adjustments / 2,015 class members. See ECF 1, ¶12.
[9] $1,835,800 ($917,900 in Labor Code § 226 penalties x 2) / 2,015 class members x 25%.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                                              Case No. 3:15-cv-05239-JCS

IV.     **CONCLUSION**

The Court should certify the class of over 2,100 HMCs and appoint Plaintiff and his counsel to represent the class, so that it can adjudicate in one action the lawfulness of Wells Fargo's policy of charging HMCs for use of marketing tools and whether Wells Fargo's uniform schedule for paying commissions is timely under California law.

DATED:  April 28, 2017                    WYNNE LAW FIRM


By: _____ */s/ Edward J. Wynne* _____
                              EDWARD J. WYNNE
                          *Attorneys for Plaintiff HUY NGUYEN*

DATED:  April 28, 2017                    LEONARD CARDER, LLP


By: _____ */s/ Aaron Kaufmann* _____
                              AARON KAUFMANN
                              DAVID POGREL
                              ELIZABETH GROPMAN
                          *Attorneys for Plaintiff HUY NGUYEN*